IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.G.

05 JUL 25 AM 6: 43

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | Χ | |
| Plaintiff, | Χ | |
| | Χ | |
| vs. | Χ | Cv. No. 04-2514-Ma/V |
| | Χ | Cr. No. 01-20064-1-Ma |
| FRED ASKEW, | Χ | |
| Defendant. | Χ | |
| | Χ | |

---

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING IRREGULAR MOTIONS
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

Defendant Fred Askew, Bureau of Prisons inmate registration number 17740-076, an inmate at the Federal Prison Camp in Millington, Tennessee, filed a pro se motion pursuant to 28 U.S.C. § 2255 on July 8, 2004. The Court issued an order on November 9, 2004 directing Askew, pursuant to Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, to file a copy of his motion bearing his original signature. Defendant complied with the Court's order on November 18, 2004.

Defendant has filed a number of documents in support of this motion. Askew wrote a letter to the Court, which was dated October 12, 2004 and docketed October 21, 2004, objecting to his sentence and seeking appointment of counsel and release on bail. On January 19, 2005, defendant submitted a motion entitled "Request for Order to Show Cause and Injunctive Relief." The defendant wrote another letter to

the Court, which was dated February 20, 2005 and docketed February 25, 2005, inquiring about the status of his motion.

On March 27, 2001, a federal grand jury returned a two-count indictment against Askew and five codefendants. The first count charged all defendants with conspiring, in violation of 18 U.S.C. § 371, to (i) embezzle, steal, unlawfully take, and carry away from a motor truck, vehicle, storage facility, platform, and depot, with intent to convert to their own use, goods and chattels of a value of more than $1000 moving in interstate commerce, in violation of 18 U.S.C. § 659; (ii) knowingly receive and have in their possession goods and chattels having a value in excess of $1000, knowing the same to have been stolen and embezzled from an interstate shipment of freight and property, in violation of 18 U.S.C. § 659; and (iii) transport in interstate commerce goods and merchandise of a value of more than $5000 knowing the same to have been stolen, in violation of 18 U.S.C. § 2314. The second count charged that Askew, on or about May 11, 1998, embezzled, stole, unlawfully took and carried away, and concealed a truckload of laptop computers traveling from Chicago to Memphis, in violation of 18 U.S.C. § 659.

A jury trial commenced on August 8, 2001 before then-District Judge Julia Smith Gibbons. On August 10, 2001, the jury returned a not guilty verdict on count 2, and Judge Gibbons declared a mistrial on count 1. A second jury trial commenced on September 10, 2001 before Visiting Judge Bernard A. Friedman, and the jury returned a guilty verdict on count 1 on September 13, 2001. Judge Gibbons conducted a sentencing hearing on January 4, 2002, at which Askew was sentenced to sixty (60) months imprisonment, to be followed by a

2

three-year period of supervised release.[1] The Court also ordered restitution in the amount of $262,236.40. Judgment was entered on January 17, 2002. The United States Court of Appeals for the Sixth Circuit affirmed Askew's conviction and sentence. United States v. Askew, 74 Fed. Appx. 545 (6th Cir. Aug. 27, 2003) (per curiam).

In his original motion pursuant to 28 U.S.C. § 2255, which was filed on July 8, 2004, Askew contended that the enhancement of his sentence by twenty points pursuant to the sentencing guidelines was unconstitutional because of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). In his letter filed on October 21, 2004, Askew (i) complained that the laptop computers were included in the relevant conduct for sentencing purposes although he was acquitted of that charge; (ii) argued that his counsel rendered ineffective assistance, in violation of the Sixth Amendment, for failing to make certain arguments at the sentencing hearing about the laptop computers; (iii) asked for appointment of counsel; and (iv) asked for release or a modified sentence of home confinement because of Blakely. In his January 19, 2005 filing, Askew argued that he was entitled to relief on the basis of United States v. Booker, 125 S. Ct. 758 (2005).

---

[1]    Pursuant to § 2B1.1(a)(1) of the United States Sentencing Guidelines ("U.S.S.G"), the base offense level for larceny, embezzlement, and other forms of theft, and for receiving, transporting, transferring, transmitting, or possessing stolen property is 4. Askew received four enhancements: (i) a 12-point enhancement, pursuant to U.S.S.G. § 2B1.1(b)(1)(M), because the value of the property at issue, including the value of the laptop computers for which Askew had been acquitted, was more than $500,000 but less than $800,000; (ii) a two-point enhancement, pursuant to U.S.S.G. § 2B1.1(b)(4)(A), because the offense involved more than minimal planning; (iii) a four-point enhancement, pursuant to U.S.S.G. § 3B1.1(a), as the organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and (iv) a two-point enhancement, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice. As a result of these enhancements, Askew's total offense level was 24. Given Askew's criminal history category of I, the guidelines called for a sentencing range from 51 to 63 months.

3

As a preliminary matter, Askew cannot raise the objection to inclusion of the laptop computers in his relevant conduct in this § 2255 motion. That issue was raised on direct appeal, and the Sixth Circuit concluded that the inclusion of the laptop computers in the relevant conduct was not plain error. United States v. Askew, 74 Fed. Appx. at 546-48. "[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999); see DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996). In this case, Askew appears to contend that the Supreme Court's decisions in Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 758 (2005), constitute an intervening change in the law and thus are an extraordinary circumstance justifying reconsideration. As will be discussed infra, the defendant's contention is erroneous.

Askew also contends that his attorney rendered ineffective assistance, in violation of the Sixth Amendment, for failing to make certain arguments about the laptop computers at the sentencing hearing. A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair

4

trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

To demonstrate deficient performance by counsel, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citation omitted); see also Coe v. Bell, 161 F.3d 320, 342 (6th Cir. 1999) ("The specifics of what Coe claims an effective lawyer would have done for him are too voluminous to detail here.  They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983) ("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'").

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's

ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

Where, as here, a defendant contends that he received ineffective assistance of counsel at his sentencing, the Supreme Court has held that any increase in a defendant's sentence constitutes prejudice within the meaning of Strickland. Glover v. United States, 531 U.S. 198, 202-04 (2001).

In this case, the Sixth Circuit's decision on direct appeal contained the following passage addressing the theft of the laptop computers:

> Turning to the facts of the present case, defendant points out that the theft of the laptop computers occurred in May 1998 while the theft of the television sets began in May 1999, over a year later. Furthermore, there are other factors that support a conclusion that the laptop theft did not constitute relevant conduct: 1) he did not undertake the theft with the co-conspirators who assisted him with the televisions; 2) the items stolen were different; and 3) while all of the thefts involved trucks, the modus operandi was otherwise not the same.

> However, defendant failed to present these arguments to the district court. This oversight deprived the government and the district court of the opportunity to address defendant's points during the sentencing hearing. Consequently, our review is for plain error.

United States v. Askew, 74 Fed. Appx. at 547. According to Askew, trial counsel's failure to raise these issues constituted ineffective assistance.

Notwithstanding the distinctions raised by appellate counsel, the Sixth Circuit explained at length why the laptop computers could appropriately be considered relevant conduct:

> The government argues that the laptop and television thefts were sufficiently similar to represent a common scheme or plan and thus represent relevant conduct for sentencing purposes. According to the trial testimony of Jason Wilson, the man who purchased the stolen televisions, each of defendant's two brothers unloaded televisions from the truck on at least one occasion. During the first trial, co-conspirator Archie Collier testified that one of

defendant's brothers told him that defendant had computers for sale at approximately the same time as the laptop theft. Also during the first trial, co-conspirator Jeffrey Tuggle stated that defendant told him that "he had just brought some computers from Chicago, and he had the truck" and was therefore capable of removing the televisions from Sears. Finally, Wilson testified during the first trial that defendant "said he had stole a load of laptop computers that he sold for $600 apiece."

Admittedly, the link between the theft of the laptop computers and the subsequent conspiracy is not ironclad. However, there is evidence that defendant used the laptop theft to bolster his credibility in recruiting participants for the conspiracy and that at least one of his brothers may have participated in both crimes. When coupled with the fundamental similarity of the crimes, we would be hard pressed to conclude that the district court committed plain error when it included the theft of the laptops as relevant conduct.

Id. at 547-48. Askew does not attempt to establish that there is a reasonable probability that, if only counsel had made the arguments at issue, the sentencing judge would not have considered the laptop computers to be part of the relevant conduct. Accordingly, this issue is without merit.

Askew is not entitled to relief on the basis of Blakely and Booker. "As a general rule, new constitutional decisions are not applied retroactively to cases that were finalized prior to a new Supreme Court decision." Goode v. United States, 305 F.3d 378, 383 (6th Cir. 2002); see Schriro v. Summerlin, 124 S. Ct. 2519, 2522-26 (2004) (holding that decision in Ring v. Arizona, which held that a sentencing judge in a capital case may not find an aggravating factor necessary for imposition of the death penalty, and that the Sixth Amendment requires that those circumstances be found by a jury, does not apply retroactively to cases on collateral review); Teague v. Lane, 489 U.S. 288 (1989). Applying these standards, the Sixth Circuit

8

has held that <u>Blakely</u> and <u>Booker</u> issues cannot be raised in an initial motion pursuant to 28 U.S.C. § 2255. <u>Humphress v. United States</u>, 398 F.3d 855, 860-63 (6th Cir. 2005).

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; <u>see also</u> Rule 4(b), Rules Governing Section 2255 Motions in the United States District Courts. Therefore, the Court finds that a response is not required from the United States Attorney and that the motion may be resolved without an evidentiary hearing. <u>United States v. Johnson</u>, 327 U.S. 106, 111 (1946); <u>Baker v. United States</u>, 781 F.2d 85, 92 (6th Cir. 1986). Defendant's conviction and sentence are valid and therefore, his motion is DENIED. Accordingly, the motions for appointment of counsel and for release on bond or home confinement are DENIED.

Consideration must also be given to issues that may occur if the defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>see also</u> Fed. R. App. P. 22(b); <u>Lyons v. Ohio Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983), which

requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484 (quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also id.</u> at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the

debatability of the underlying constitutional claim, not the resolution of that debate.").[2]

In this case, for the reasons previously stated, the defendant's claims are plainly lacking in substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. Hereford v. United States, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal in forma pauperis in a § 2255 case, and thereby avoid the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917,[3] the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. Hereford, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

Rule 24(a) states, in pertinent part that:

A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the

---

[2]   By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." Id. at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." Id.

[3]   Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

district court a motion for leave to so proceed, together
with an affidavit, showing, in the detail prescribed by Form
4 of the Appendix of Forms, the party's inability to pay
fees and costs or to give security therefor, the party's
belief that that party is entitled to redress, and a
statement of the issues which that party intends to present
on appeal.

The Rule further requires the district court to certify in writing
whether the appeal is taken in good faith. For the same reasons the
Court denies a certificate of appealability, the Court determines
that any appeal in this case would not be taken in good faith. It is
therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any
appeal in this matter by this defendant is not taken in good faith,
and he may not proceed on appeal in forma pauperis.

IT IS SO ORDERED this __22d__ day of July, 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

12

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 8 in case 2:04-CV-02514 was distributed by fax, mail, or direct printing on July 26, 2005 to the parties listed.

Fred Askew
FPC-MILLINGTON
17740-076
P.O. Box 2000
Millington, TN 38083

Frederick H. Godwin
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT